W. B. BEEBE v. JOHN F. CARTER *et al.*

1. PETITION — *Amendment Claiming Personal Judgment.* Where personal service is made on one defendant, and another, against whom no personal judgment was asked, is served by publication, and where the latter afterward makes a general appearance and files a pleading, it is competent for the court thereafter to allow the original petition to be amended so as to charge the latter personally, and to warrant the recovery of a personal judgment against him.

2. GOODS FURNISHED — *Liability — Account Books of Seller.* In an action where it is claimed that two persons are liable for goods furnished, the fact that they are charged to one upon the books of the seller is an important circumstance in determining to whom the credit was actually given, but it is not of itself conclusive. All of the facts and circumstances are to be taken into account in deciding whether one or both are liable.

3. EVIDENCE, *Sustains Findings.* The testimony examined, and *held* to be sufficient to sustain the findings and judgment of the trial court.

*Error from Marion District Court.*

ACTION by *Carter* and another against *Beebe* and another to foreclose a mechanic's lien. Judgment was rendered for plaintiffs, and defendant *Beebe* brings error.

*King & Kelley*, for plaintiff in error:

1. We insist that the law is that, where a defendant is served by publication only, and the only relief asked against him is to bar his interest in real estate on which plaintiff claims a lien, no amendment can be made or allowed to the petition, setting up a cause of action for a money judgment against the defendant so served, and no money judgment can be rendered against him in such case. See *Neal v. Reynolds,* 38 Kas. 433; *Rullman v. Hulse,* 32 id. 598; same case, 33 id. 670; *Van Horn v. Manufacturing Co.,* 37 id. 526.

Under the circumstances of this case, it must be presumed that the statement of the original cause of action was made wrongfully, to procure service of summons upon the defendant

Beebe in violation of the spirit of the law. *Brenner v. Egly*, 23 Kas. 123; *Neal v. Reynolds*, 38 id. 434.

2. The lumber and other material were sold and delivered to Mealey as alleged in the pleadings, and is so shown by the evidence, if furnished and delivered to anyone. To Mealey the credit was given, and Beebe is in no way liable for the same. *Burkhalter v. Farmer*, 5 Kas. 479.

3. But if such an arrangement was made as plaintiff below alleges, and as it is under the evidence, Beebe was to answer for the default of Mealey—was to pay Mealey's debt—and such arrangement, not being in writing, is void under our statutes of frauds. Statutes of 1889, ¶ 3166; *Becker v. Mason*, 30 Kas. 702; *Burkhalter v. Farmer*, 5 id. 479; *Clark v. Hall*, 10 id. 81.

We are adjudged to have a first lien, and have a right to look to the lot with all the improvements thereon for our debt. *Seitz v. U. P. Rly. Co.*, 16 Kas. 133.

4. Under all the evidence, whatever contract was made between John F. Carter and S. J. Beebe was not with W. B. Beebe, and if it was with W. B. Beebe, it was beyond the authority of the agent, and is also void, being a contract to answer for the default of another, not being in writing. Gen. Stat. of 1889, ¶ 3166; *Becker v. Mason*, 30 Kas. 702; *Burkhalter v. Farmer*, 5 id. 479.

The credit was given to Mealey, and whatever contract was made by S. J. Beebe, either for himself or for his father, was a contract by which Beebe agreed to pay if Mealey did not, and a judgment cannot be legally rendered against Beebe for more than Mealey owes. The contract of Beebe is to pay the debt and answer the default of another, and is not in writing. The evidence does not show that S. J. Beebe was authorized to make such a contract as the Carters want now to claim was made, and that a contract was made, or attempted to be made, for or with W. B. Beebe. There is no evidence to prove the account sued on, or any part thereof.

*Keller & Dean*, for defendants in error:

It is urged that, as defendant Beebe was summoned by publication only, it was error to permit an amendment to be made charging him personally, after he had personally appeared in the action. We had always supposed that when a party had been legally brought into a case, any proceeding could then be taken against him that was warranted by the law of pleading and practice, and we see no reason to think otherwise now. The judgments rendered on the amended pleadings were consistent with and within the issues made by the parties, and if there was any evidence to support them they will not be held obnoxious to any objections made in the brief of plaintiff in error.

The second and third objections to the judgments are merely ramifications of the fourth objection, viz., that the judgments are not sustained by the evidence; and we will consider them as one point only. If there is any evidence to sustain the findings and judgments, a reviewing court will not undertake to weigh the testimony of the witnesses and determine on which side the preponderance lies, but the decision of the trial court on that question is held to be final and conclusive. Hence we have only to inquire whether there is any evidence fairly tending to prove the allegations of the amended petition of J. F. Carter, and the amended cross-petition of T. A. Carter. The whole of this evidence (not excerpts) must clearly convince this court, as it did the court below, that S. J. Beebe had ample authority to purchase lumber and building material to be put on his father's lands, or on lands under contract of sale to which he retained the title. Jacobitz says, when questioned as to extent of S. J. Beebe's authority, "I only know this, that W. B. Beebe makes good all contracts that S. J. Beebe made for him."

S. J. Beebe says: "There never was a contract made by my father but that I signed it." "Q. You made the bargains? A. Yes, sir." He does not attempt to deny his agency, but goes upon the assumption that it was well understood.

It is suggested by counsel that there is no consideration shown to support the contract between Beebe and the Carters. Our answer to that is, that it required no express consideration. The circumstances surrounding the transaction show the consideration. Beebe had agreed to sell the lots to Mealey, and to furnish money to make improvements thereon, and retained the title to the lots and the improvements thereon until he should be fully paid. The lumber and materials furnished by the Carters went to improve and make more valuable Beebe's property and enhance his security. If that was not a sufficient consideration to support a promise to pay, it is difficult to conceive what would be.

Objection is also made that it was a promise to pay the debt of Mealey, and therefore void under the statute of frauds. Not so. The debt was Beebe's own debt. The Carters refused to furnish any lumber or material unless Beebe would be responsible to them for the pay.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to recover for lumber and other building material, furnished by the Carters for the erection of a building in Marion upon a lot owned by W. B. Beebe, which he had contracted to sell to C. S. Mealey. It was alleged that Mealey and Beebe were indebted for the material so furnished, and a foreclosure of mechanic's lien was asked. When the action was begun the petition set forth that the debt was due from Mealey, and further alleged that Beebe and others claimed an interest therein, which it was stated was inferior to that of the plaintiffs. Service was had upon Beebe by publication. Afterward John F. Carter procured leave to amend his petition, and T. A. Carter to amend his cross-petition, by which it was alleged that W. B. Beebe was also personally liable for the material which had been used in the construction of the building.

The first complaint is of the ruling of the court in permitting these amendments to be made. It is insisted that, as no money judgment was originally asked from Beebe, and as he

was served by publication only, the allowance of the amendment was prejudicial error. Beebe had made a general appearance in the action long before the amendments were allowed. Personal service was obtained upon Mealey and other of the defendants in the county where the action was brought, and hence there is no ground for the claim that the action was wrongfully commenced. After Beebe made a personal appearance in the action, it was within the discretion of the court to allow the amendments to the pleadings, and we are unable to say that the amendments that were allowed were any abuse of that discretion.

There is a further objection that the testimony is insufficient to sustain the judgment that was given. Although there is some uncertainty and conflict in the testimony, we cannot, under the rules which control in this court, hold it to be insufficient. There being some evidence to sustain the findings and judgment, we cannot undertake to weigh the testimony of the witnesses to determine on which side the preponderance lies, but must accept the decision of the trial court as final and conclusive.

It is insisted that the testimony fails to show that W. B. Beebe ever became liable to pay for the lumber and building material that were used by Mealey; and, further, that it does not show that S. J. Beebe, with whom the negotiations were had, had any authority to contract for his father, or bind him for the material purchased. The testimony shows that W. B. Beebe was a nonresident of Kansas, and that he transacted the greater part of his business in Kansas through his son, S. J. Beebe. There is testimony tending to show that S. J. Beebe represented his father in other transactions similar to the one in question, and that all such dealings were recognized and ratified by the father. In fact, the testimony of the son tends to show that he made all the bargains and signed all the contracts made by his father, and it further tends to show that he was really the general agent of his father in Kansas. There is some testimony to sustain the finding that the liability for the building material was

Beebe's own debt.   While Mealey was erecting the building with a view of ultimately owning the property, and negotiated for the lumber with which to build it, the title to the lot was in W. B. Beebe, and, more than that, he agreed to furnish money to Mealey to make the improvements thereon. There is testimony tending to show that the Carters refused to furnish material to Mealy on his own credit, but did furnish it at the request and on the credit of Beebe.   There is enough in the evidence to support the view that the undertaking of Beebe was original, and therefore not such as falls within the statute of frauds, or open to the objection that there is a want of consideration.   It is true there is testimony that the material was charged to Mealey upon Carters' books, but this circumstance, although of value in determining to whom credit was given, is not controlling nor conclusive.   All the facts and circumstances are to be taken into account in determining on whose credit the sales were made, and as the district court, on competent proof, has found an original liability against Beebe, that finding is conclusive. The judgment of the district court will be affirmed.

All the Justices concurring.